# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEAN-PIERRE K. THOMAS,<br><br>    Plaintiff,<br><br>  v.<br><br>M. P. GARCIA, et al.,<br><br>    Defendants. | Case No. 1:08-cv-00689-LJO-DLB PC<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED**<br><br>ECF No. 115<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

## I.  Background

Plaintiff Jean-Pierre K. Thomas ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR").  Plaintiff is proceeding pro se in this civil action pursuant to 42 U.S.C. § 1983.  This action is proceeding on Plaintiff's complaint, filed May 16, 2008, against Defendants M. P. Garcia and Bonilla for excessive force in violation of the Eighth Amendment.  On April 9, 2012, Defendants filed a motion for summary judgment.  ECF No. 115.  On May 7, 2012, Plaintiff filed his opposition.  ECF Nos. 117, 118.  On June 8, 2012, Defendants filed their reply.  The matter is submitted pursuant to Local Rule 230(l).[1]

## II.  Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine

---

[1] Plaintiff was notified of the requirements for opposing a motion for summary judgment on August 3, 2012, and was granted an amended opposition deadline of September 6, 2012.  ECF No. 127; *see Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012) (requiring pro se prisoner plaintiffs be notified of the requirements for opposing a motion for summary judgment concurrently with the motion).  Plaintiff did not file an amended opposition.

1

dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* at 324. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

party, *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).

Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87 (citations omitted).

### III.  Statement of Facts[2]

At all times relevant to this action, Plaintiff was lawfully in the custody of the CDCR and was housed at Kern Valley State Prison. Defs.' Ex. A at 002-004, 009. The incident at issue in this case occurred on October 5, 2006 at Kern Valley State Prison (KVSP), at approximately 9:30 a.m., while inmates were being released to the yard. Defs.' Ex. A at 046-095. Officer Palmer observed

---

[2] All facts are considered undisputed, unless otherwise noted. Pursuant to Local Rule 260(b) and Federal Rule of Civil Procedure 56(c), all disputes with the movant's statement of facts must be supported with citation to evidence. *See* L. R. 260(b) (parties opposing Statement of Undisputed Facts shall deny those that are disputed, "including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial"). Plaintiff has substantially complied with the requirements of Local Rule 260(b), filing a statement of disputed and undisputed facts. ECF No. 117.

inmate Vega in a verbal confrontation with Psychiatric Technician (PT) Townley. *Id.* at 083, 086. Inmate Vega repeatedly demanded to know who PT Townley was and where he worked, and as PS Townley attempted to walk away, Inmate Vega continued his verbal demands. *Id.*5. PT Townley then requested the assistance of the Correctional Officers and Officer Palmer called the yard down because he did not know what Vega's intentions were. *Id.*

Officer Palmer notified Central Control of the emergency and opened the yard gate for responding staff. *Id.* Two inmates who were standing against the wall of Building 2 refused to get down, and after refusing numerous orders to get down, Officers Elijah and Harmon used pepper spray to gain compliance. *Id.* at 066-67, 075-76. A third inmate refused repeated orders to get down and Sergeant Fehlman and Officer Chesley used physical force to gain compliance with their orders. *Id.* at 063-64, 068-69. A fourth inmate, who initially complied with orders to get down, got up and started to move toward staff, Officer Clare discharged a 40 mm direct impact round toward the inmate, who again got down on the ground. *Id.* at 065.

When Sergeant Lascano arrived he observed Officer Elijah strike inmate Simmons with his baton. *Id.* at 078. As he was notifying Central Control of a "Code 1, disruptive inmates" Sergeant Lascano observed Plaintiff move on the ground from the wall to the small yard near Building 2.[3] *Id.* Sergeant Lascano then ordered responding staff to form a skirmish line in front of inmate Plaintiff and the three other inmates near him, to prevent them from getting up. *Id.*

Defendant Garcia approached the four inmates, including Plaintiff and ordered them to cross their legs. *Id.*, at 072-73. Plaintiff refused to cross his legs, while the other three inmates complied with Defendant Garcia's orders. *Id.*; Compl., ECF No. 1 at p. 5. Defendant Garcia ordered Plaintiff to put his hands behind his back to be handcuffed. Defs.' Ex. A at 072-73; Compl., ECF No. 1 at p. 5. Plaintiff did not hear Defendant Garcia's order.[4] Pl.'s Decl. 4. Plaintiff held his own arm to brace himself from getting flung to the ground. Pl.'s Decl. 4. When Plaintiff attempted to get up on his

---

[3] Plaintiff opposes Defendants' original statement that Plaintiff attempted to get up off the ground. Plaintiff declares that he never attempted to get up off the ground, merely lifting his head to see what was occurring. Pl.'s Opp'n, Ex. G, Pl.'s Decl. 2. Plaintiff concedes that he crawled on the ground for a short distance. The objection to Defendants' fact is sustained and it is modified accordingly.

[4] Defendants contend that Plaintiff refused and began moving his legs. Defs.' Ex. A at 072-73. Plaintiff has presented a different interpretation of his actions by suggesting that either Defendant Garcia did not make the statement, or Plaintiff did not hear it made. Plaintiff also declares that he slowly began to cross his legs. Pl.'s Decl. 4. Plaintiff's objection is sustained and the Court modifies the statement of fact.

4

knees, Defendant Garcia, with the assistance of Defendant Bonilla put Plaintiff down on the ground. Defs.' Ex. A at 059-60, 072-73.

Plaintiff admits that he refused repeated direct orders to cross his legs. Defs.' Ex. B at 25:18-27-20. Plaintiff admits that he rose up to look around when he heard pepper spray being used. *Id.* at 14:5-15:11. Plaintiff admits that when he was told to "shut-up" he responded by telling Defendant Garcia to "shut-up." *Id.* at 28:15-21. Plaintiff admits that he was "holding his arm" as Defendant attempted to apply handcuffs.[5] *Id.* at 29:15-30:24. After Plaintiff was placed in handcuffs, Defendants Garcia and Bonilla picked Plaintiff up off the ground and slammed him head first into the ground. Pl.'s Decl. 5.[6]

At his disciplinary hearing, Plaintiff told the Senior Hearing Officer that Defendant Garcia was holding his head on the ground when Defendant Garcia "slammed" him. Defs.' Ex. A at 019. In an administrative appeal, Plaintiff claimed that Defendant Garcia "slammed" him on the ground immediately after applying handcuffs. *Id.* at 034.

Defendants Garcia and Bonilla were responsible for escorting Plaintiff to a holding cell in the medical clinic. *Id.* at 049.[7] Plaintiff contends that he was again slammed to the ground by Defendants. Pl.'s Decl. 4-5.

Defendants contend that Plaintiff suffered an abrasion to his forehead that was approximately 1½ inches x ½ inch in size. Defs.' Ex. C at p. 004. Plaintiff contends that half the skin on his forehead was torn off. Pl.'s Decl. 9. Plaintiff's abrasions healed without any sign of infection. Defs.' Ex. C at p. 004.

Although Plaintiff claims that he had bruises on his wrists for two weeks because the

---

[5] Defendant construes Plaintiff's action of holding his arm as resisting being handcuffed. Plaintiff contends that he was merely bracing himself. The Court finds that there is a genuine dispute of material fact as to whether Plaintiff's conduct was resisting.

[6] Defendants contend that as Plaintiff attempted to get up off the ground and Defendants Garcia and Bonilla pushed him back down on the ground. Defs.' Ex. A at 059-60, 072-73. Plaintiff has sufficiently raised a dispute of fact, and his objection is sustained here.

[7] Defendants contend that during the escort Plaintiff stopped moving and turned his shoulder toward Defendant Bonilla. Defs.' Ex. A at 059-60, 072-73. In order to gain control of Plaintiff, Defendants placed Plaintiff on the ground. *Id.* Officers Elijah and Ortiz saw Plaintiff kicking his legs. *Id.* at. 021. Officer Elijah also saw Plaintiff resisting during the escort. *Id.* Inmate Moore, J-52867, one of Plaintiff's witnesses at his disciplinary hearing, saw Plaintiff turn his shoulder when Plaintiff was standing up. *Id.* at 022.
Plaintiff contends that this did not occur, and that it was merely used as an excuse to slam Plaintiff to the ground again. Plaintiff declares that as he was being walked, Defendant Garcia told Plaintiff to shut up repeatedly, and again Plaintiff told Defendant to shut up, at which point he was slammed to the ground again. Pl.'s Decl. 4-5. Plaintiff contends that he did not kick or kick at Defendants. *Id.* Thus, Defendants' additional facts are disputed.

handcuffs were too tight, Plaintiff did not seek any medical treatment for it 10 days after the incident. *Id.* However, Plaintiff contends that the examining nurse failed to document the marks and bruising, and that a month after the incident, marks were still on his wrists. Pl.'s Decl. 7, 12. Plaintiff twice requested that an MRI of his head be done. Defs.' Ex. C at pp. 1-3. His request was denied because it was not medically indicated. *Id.* Plaintiff was medically examined on October 5, 2006. He complained of pain in his wrists, but the nurse did not report bruises, redness or swelling. Defs.' Ex. A at 089. Plaintiff contends that a medical technical assistant told the nurse that she had written enough and that it Plaintiff had a scratch regarding Plaintiff's injuries. Pl.'s Decl. 7.

On October 24, 2006, Plaintiff was interviewed by the Investigative Employee, for his Rule Violation Report, and Plaintiff said that he still had "cuff marks" at that time. *Id.* at 019. Plaintiff also told the Investigative Employee that Defendant Garcia later asked him why he had not told him that the cuffs were too tight. *Id.*

**IV.    Analysis**

    **A.    Eighth Amendment**

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." *Id.* (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. *Id.* at 9; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of

the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7.  "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (internal quotation marks and citations omitted).  "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." *Id.*

Defendants contend that the use of force was justified with regards to Defendant Garcia's application of handcuffs.   Defendants contend that the application of the handcuffs by Defendant Garcia was done in haste, but justified under the circumstances because Plaintiff was actively resisting.  Defs.' Mot. Summ. J., Mem. P. & A. 7-8.  However, there remains a genuine dispute of material fact.  Plaintiff raises a dispute as to whether "holding his arm" constitutes active resistance. Neither party has adequately described what was occurring for the Court to conclude that Plaintiff resisted handcuffing. There is also a dispute as to whether Defendant Garcia ordered Plaintiff to cuff up and Plaintiff refused, or whether Defendant made the order.

Plaintiff contends that he told the examining nurse on October 5, 2006 of his injuries to his wrist, and told the use-of-force interviewer on October 6, 2006 that his wrists were bruised. Defendants cite to the use-of-force interview, in which Plaintiff referred to his wrists as swollen, but still working fine. Defs.' Reply 2-3.  Whether or not Plaintiff's wrists were working fine does not adequately address the material fact of whether the application of the handcuffs was done sadistically and maliciously to cause harm.  Thus, Defendant Garcia is not entitled to summary judgment as a matter of law.

**B.    Qualified Immunity**

Defendants also contend they are entitled to qualified immunity for the alleged slamming of Plaintiff to the ground twice.  Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In ruling

7

upon the issue of qualified immunity, one inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand"). The other inquiry is whether the right was clearly established. *Saucier*, 533 U.S. at 201. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." *Id.* "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202 (citation omitted). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Based on the disputes of material fact raised by Plaintiff, Defendants are not entitled to qualified immunity. As to the first use of force, Defendants contend that they believed the situation merited pushing Plaintiff to the ground to control him. However, Plaintiff contends that he was slammed head first into the ground. As to the second use of force, Defendants contend that Plaintiff resisted the escort thus necessitating that he be taken down to the ground. However, Plaintiff contends that he was not resisting. Plaintiff also contends that half the skin on his forehead was torn off because of the two incidents. There remains material facts in dispute as to whether Defendants used excessive force on Plaintiff. Such rights were clearly established at the time of the incident. *See*, *e.g.*, *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (excessive force).

**V.     Conclusion**

Based on the foregoing, it is HEREBY RECOMMENDED that Defendants' motion for summary judgment, file April 9, 2012, be denied.

These Findings and Recommendations will be submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  A party may respond to another party's objections by filing a response within **fourteen (14) days** after being served with a copy of that party's objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **November 5, 2012**                    /s/ *Dennis L. Beck*
                                                                UNITED STATES MAGISTRATE JUDGE